## SCHMIDT v. DEAN.

1. Where a married woman borrows money upon the representation that it is for herself, and the lenders know nothing to the contrary, she is liable for this debt. MR. CHIEF JUSTICE SIMPSON, *dissenting.*
2. Petition for rehearing refused.

Before HUDSON, J., Spartanburg, March, 1889.

Action by L. Schmidt against Martha C. Dean. a married woman, to foreclose a mortgage of land, dated September 15, 1885. The case is thus stated by the Chief Justice in his dissenting opinion : The defendant, appellant, a married woman, borrowed money from the respondent on two separate occasions, for which she gave her notes—the first signed by herself, Joseph Hill, and James L. Dean, her husband; the second by herself; the interest on the first to be paid annually, and, in case of suit, all costs, including 10 per cent. attorney's fees ; interest on the second at 10 per cent. from maturity until paid. She gave a mortgage on certain real estate to secure these notes. The action below was resisted on the ground that defendant was a married woman. His honor, the Circuit Judge, found as a matter of fact, upon the testimony and the report of the referee, with exceptions, "that the defendant borrowed the money upon representations that it was for herself ; that she loaned the money, taking securities therefor ; that she received benefit from said securities ; that she had claimed the benefit of said securities against the unsecured creditors of her debtors ; that she had declared under oath, that those securities were her separate property, and announced her intention ever since the inception of this suit of holding them as her property ;" and upon these facts he predicated a judgment of foreclosure for $954.69 against the property described in the complaint, with the costs and disbursements, including a fee of $75 for the attorneys, with leave to plaintiff to apply, in term time, for the usual formal decree in foreclosure, which was afterwards prepared and granted, with leave to enter judgment and issue execution for any deficiency. From this decree and judgment the defendant has appealed.

*Mr. Stanyarne Wilson*, for appellant.

*Messrs. Thomson, Nicholls & Moore*, contra.

November 11, 1889. The opinion of the court was delivered by
Mr. JUSTICE McIVER.    Under the well settled rule, I think
we are bound to accept the facts as found by the concurring judg-
ment of the referee and Circuit Judge.    According to those find-
ings, the defendant borrowed the money in question under the
representation that it was for herself, and the lenders knew
nothing to the contrary.    Upon this state of facts it seems to me
that there was no error in holding the defendant liable.    In the
case of *Howard* v. *Kitchens, ante* 490, decided at the present term,
I have undertaken tc state the reasons why I think a married
woman should be liable for money borrowed by her for her own
use, and not for the use of her husband or any other person, even
where such money has not been borrowed for the purpose of im-
proving or otherwise contributing to the use of the separate estate
previously owned by her, and it is not necessary to repeat them
here.    And as Mr. Justice McGowan concurs in this conclusion,
for the reasons stated in his separate opinion herewith filed,
    It is the judgment of this court, that the judgment of the Cir-
cuit Court be affirmed.

Mr. JUSTICE McGOWAN.    The referee found and the Circuit
Judge concurred in the finding that the defendant, by taking the
notes and mortgages of Hill & Dean for the money which she bor-
rowed on the securities sued on, "created for herself a new estate."
I do not think that finding was against the weight of the evi-
dence.    This being the case, it seems to me that the question
involved has been recently decided.    This court has held that
"since 1882 a married woman has full power to make any con-
tract with reference to her separate estate, and can, by mortgage
or otherwise, subject such estate to liability for the performance
of such contracts.    As to her separate property, she has all the
rights to contract that a grown-up man of twenty-one years would
have."    See *Dial* v. *Agnew,* 28 S. C., 460 ; *Fant* v. *Brown,*
29 *Id.,* 598 ; *Greig & Matthews* v. *Smith, Ibid.,* 434 ; and also

*Howard* v. *Kitchens, ante* 490, and *Law* v. *Lipscomb, post* 504, decided at the present term of the court.

The difference between this case and that of *Aultman & Taylor Co.* v. *Gibert* (28 S. C., 305), is obvious. In that case it was in proof that Mrs. Gibert purchased "the machinery" for her husband, and it was held that "a married woman's separate estate is not bound by a mortgage executed by her in 1884 to secure the note of another person." While it is in proof here that Mrs. Dean borrowed the money for herself, and now holds securities for it in her own name. That made it a contract in reference to her separate estate.

Doubtless it is true that the court does not sit for the purpose of enforcing mere moral obligations, but still, in dealing with contracts upon the faith of which parties have parted with their money, it would seem that some consideration is due to truth and fair dealing. While the court cannot undertake to enforce mere moral obligations, it cannot be otherwise than satisfied, when the proper conclusions of law are found to correspond with what seems to be the justice of the case.

Mr. Chief Justice Simpson. [Omitting his statement, already given.] As we understand the case, there are two contracts involved : first, the notes, and second, the mortgages, assuming a mortgage to be a contract. His honor held the defendant liable upon both, ruling that she had the power to make both. The question before us is, Did his honor err in thus holding ?

As to the mortgage. We think the recent case of *Aultman & Taylor Company* v. *Gibert* (28 S. C., 303), is conclusive. In that case, Mrs. Gibert, a married woman, purchased a steam engine and other machinery, for which she gave note, secured by a mortgage. This court, recognizing her power under the act of 1870 to purchase the property, denied power in her to mortgage her separate estate to secure the purchase money thereof. This was done after full and deliberate consideration, and the conclusion of the court was based upon the ground, that it not appearing that the purchase of the machinery had any connection with her separate estate, her mortgage given to secure the purchase

money thereof could not be legal, under the act which authorized a married woman to contract and be contracted with as to her separate property, the said mortgage having no reference to said separate estate in the sense of the act as construed in former decisions.

Now, in the case below, the notes which the mortgages in question were executed to secure, were given not for the purchase of property, as in *Aultman & Taylor Company* v. *Mrs. Gibert, supra,* but for borrowed money ; and admitting for the present that defendant had the power to borrow money and to give a note for its payment, where is the difference between that case and the case of *Aultman & Taylor Company* v. *Gibert,* in so far as the mortgages are concerned and the power of the married woman to execute said mortgage, there being no evidence that said borrowed money was intended for the use of, or had reference to, her separate estate. As we have said, this question was fully considered and elaborately discussed in the Aultman & Taylor Company case, *supra,* and it is useless to go through the discussion again. We think the judgment below, in so far as the mortgages were involved, was in direct conflict with the doctrine of that case, and it must be overruled.

Next, as to the notes upon which judgment below was granted for such deficiency, if any, as might exist after the application of the proceeds of the land ordered to be sold. These notes, as conceded on all hands, were given for money borrowed by the defendant. There is no evidence, at least no such fact has been found, that this money was either borrowed or used for the separate estate of the defendant; on the contrary, there was much evidence that the money went into the hands of her husband. But take the facts, as found by the Circuit Judge and as stated in the beginning of this opinion, that the defendant borrowed money for herself, and that she used it by investing in the securities referred to by his honor. There is still nothing in it but a case of borrowing. Now, the question arises, can a married woman make a valid contract or note, based upon borrowed money as a consideration ?

We repeat here, what we have several times stated before, that a married woman's normal and common law condition is that of

complete disability as to contracts. Under the Constitution of 1868 she has been invested with certain powers applicable to the separate estate which that instrument provided for her, and by the act of assembly she has been given other and additional powers, to wit, to purchase property in her own name and to contract and be contracted with as to her separate property. Now, it cannot be contended for a moment that she is invested with power under the constitution to borrow money, as her power therein is confined to her separate estate, to wit, to disposing of, bequeathing, and alienating the same. Nor can such power be claimed under the act allowing her to contract or be contracted with as to said separate estate, unless it appears (the burden of showing which is upon the plaintiff) that the money borrowed was for the use, in some way, of said estate.

1. Can it stand under the act giving power to purchase property? This must depend upon the intention of the general assembly, to be reached in part by the terms used in the act. Construed under this rule, we do not think that the terms "purchase property" includes, or were intended to include, an act of borrowing, for the reason that these terms have very different significations, and when each is intended, the words indicating such intentions doubtless would be used.

But in addition to this, going outside of the exact phraseology of the act, and looking at its intent and the general scheme of the constitution and of the acts of assembly, with their amendments, upon the subject of married women and their powers, we fail to see a single hook upon which to hang a doubt as to the meaning and purpose of this scheme. Its evident and patent purpose was to give to married women a separate estate in all the property which they might obtain by gift, grant, devise, bequest, or otherwise, and to wall the property in so that it should be hers, and hers alone, and especially to be guarded against the debts or contracts of her husband. It being intended as hers and hers alone, of course it was necessary to her proper enjoyment of it that she should have some powers in connection with it; hence the powers granted in the constitution, to wit, to dispose of, to bequeath, and to alienate. Hence also, under the act, the power to contract and be contracted with generally as to said

separate property.    Hence, too, was it not that in the act of 1870 she was given the power to purchase property simply, not including the power to borrow money generally, however, because that power was embraced already in the power to contract and be contracted with, &c., &c., whenever it appeared that the borrowing was for the separate estate ?    In this case it does not appear that the money borrowed was for such use, and therefore we cannot concur in the judgment below that the notes were valid and legal instruments.

No doubt, the facts found here present this case in a very unfavorable light against the defendant, and shows very strong moral grounds why the defence relied on here should never have been interposed.    But what have these grounds to do with the legal question before us ?    Our province extends to and embraces all legal questions, but it does not include those resting upon only moral considerations.    If we were a court of morals, or a court of legislation, we might look into these facts ; but being a court simply of construction and determination of what the law is, and not what it should be, we must decide the law as we understand it, regardless of consequences or surroundings.

We do not see how the fact that the defendant turned this money over to her husband, taking notes and mortgages as security, to which she still holds on, reflects light back to her borrowing it for the use of her separate estate.    Do they not rather show that the money was borrowed for the use of her husband at the beginning ?    And if so, does not the transaction present an apt illustration of how easy the whole scheme of the act might be defeated and the previous decisions of the court undermined and evaded, and the provisions of the constitution that the separate estate of the wife should in no event become liable for the debts or contracts of her husband, uprooted by simply allowing a married woman to borrow money in silence, mortgage her separate estate to secure its payment, and then turn the whole amount over to her husband?    How few wives could resist the importunities of failing husbands, and if such was the law as contended for as to these notes, how few separate estates would be in existence long ?    None, except perhaps where they were really of no use, because not needed.

Judgment affirmed.

In this case appellant filed a petition for rehearing, alleging that the court had misapprehended the referee's findings of fact, and had affirmed a judgment for deficiency in the decree of foreclosure.[1]

December 4, 1889.  The following order was delivered

PER CURIAM.  We have carefully examined this petition, and finding that no material fact or principle of law has been overlooked, the petition is dismissed.

---

[1] No such point was made in any of the exceptions.—REPORTER.